**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Floyd COLEMAN, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 13, 2004.

Filed June 15, 2004.

Reargument Denied Aug. 20, 2004.

Alston B. Meade, Philadelphia, for appellant.

Jason Fetterman, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: BENDER, BECK and KELLY, JJ.

BENDER, J.

¶ 1 This is an appeal from a judgment of sentence imposed upon Appellant after he was convicted of sexual assault in a jury trial. Appellant raises essentially two issues: whether the court erred in considering the Commonwealth's motion to reconsider sentence and whether the court erred in treating Appellant's court martial as a prior conviction for purposes of determining the prior record score. We vacate and remand.

¶ 2 Appellant was arrested and charged with involuntary deviate sexual intercourse, attempted rape and sexual assault after the filing of a complaint by the sixteen-year-old male victim who had resided with Appellant. After a jury trial conducted from March 19–22, 2002, Appellant was convicted of sexual assault and acquitted of the other charges. On May 20, 2002, Appellant was sentenced to thirty to sixty months' imprisonment to be served in a county facility, with eligibility for work release, followed by five years reporting probation. At Appellant's request, the sentence was reduced to two-and-a-half to five years less a day so that Appellant would be eligible to serve the time in a county facility.

¶ 3 On May 28, 2002, the Commonwealth filed a motion for reconsideration of sentence asserting that the sentence imposed was too lenient and that the sentence was incorrect since the guidelines were miscalculated by failing to take into consideration a court martial that had led to Appellant being dishonorably discharged from the Army. In response to the Commonwealth's motion, a hearing was scheduled

for June 20, 2002. Prior to that hearing, on June 19, 2002, Appellant filed a notice of appeal from the judgment of sentence. That appeal was docketed at 1977 EDA 2002.

¶ 4 The hearing on the Commonwealth's motion to reconsider sentence, scheduled for June 20, 2002, was not held until June 24, 2002, and was held notwithstanding Appellant's filing of an appeal. At the hearing, the Commonwealth introduced documentation from the Department of the Army which revealed that Appellant had been court martialed on a charge specifying two instances of indecent acts. Appellant was found guilty on both specifications which resulted in a demotion in grade and a bad conduct discharge. The Commonwealth argued that Appellant's military conviction for "indecent acts" must be treated as a conviction for indecent assault under Pennsylvania law. In response to the introduction of these documents, Appellant's sentence was vacated. Sentence was re-imposed on September 26, 2002. At that time, Appellant was sentenced to four to eight years' incarceration in a state correctional institution followed by two years' reporting probation. This sentence reflected a change in the prior record score of 0 to 1, a change that was made after the court agreed that Appellant's court martial conviction must be equated to convictions for indecent assault and counted in the prior record score. The present appeal was filed on October 24, 2002. On December 17, 2002, this Court quashed Appellant's appeal at 1977 EDA 2002 as duplicative of the subsequent appeal, the appeal herein.

■ ¶ 5 Appellant first contends that the court erred in vacating the original sentence on June 24, 2002, as the court lacked jurisdiction to do so. We disagree. Appellant contends that the trial court lost jurisdiction over the sentence, and

the power to impose a greater sentence upon reconsideration, as it did not vacate Appellant's sentence within thirty-days of imposition. In making this argument, Appellant refers to older case law, i.e., *Commonwealth v. Feagley*, 371 Pa.Super. 593, 538 A.2d 895 (1988), that required a court to vacate a judgment of sentence within 30 days to maintain jurisdiction of the sentence even if a motion to reconsider the sentence had been filed and was still pending. However, the rules of criminal procedure have since been revised to delay the time for taking an appeal from a judgment of sentence when post-sentence motions have been filed by either party. See Pa.R.Crim.P. 720–21. Under the current rules, the period for taking an appeal is within thirty days of the disposition of post-sentence motions as long as the post-sentence motion was filed within ten days of the imposition of sentence. *Commonwealth v. Bilger*, 803 A.2d 199 (Pa.Super.2002). Here, the Commonwealth filed its motion for reconsideration of sentence within ten days of imposition of sentence. Thus, the court did not lose jurisdiction over the sentence within thirty days and the court retained jurisdiction to impose a new sentence upon reconsideration.

■ ¶ 6 Appellant next contends that the court erred in treating his military court martial as a conviction for purposes of calculating his prior record score under the sentencing guidelines. With this contention, we agree.

■ ¶ 7 Under the sentencing guidelines, "an out-of-state, federal or foreign conviction or adjudication of delinquency is scored as a conviction for the current equivalent Pennsylvania offense." 204 Pa. Code § 303.8(f)(1). The Sentencing Guidelines do not discuss military court martials. However, the Sentencing Guidelines Implementation Manual (Fifth Ed.1997) (hereinafter "Manual") states:

Under the Uniform Code of Military Justice, a court martial for a criminal offense is a federal conviction and as such should be included in the prior record score.

Pennsylvania Commission on Sentencing, Sentencing Guidelines Implementation Manual 141 (5th ed.1997). The stance taken in the Manual regarding court martials is supported, to a degree, by caselaw. Our Supreme Court, in *Commonwealth v. Smith*, 528 Pa. 380, 598 A.2d 268 (1991), considered whether court martial convictions under the Uniform Code of Military Justice (UCMJ) could be used for enforcement of the mandatory minimum sentencing provisions found at 42 Pa.C.S. § 9714, relating to repeat crime-of-violence offenders. The offense in question there was robbery and the appellant had a prior court martial conviction for robbery. The Court concluded that, for § 9714 purposes, the court martial convictions did constitute a prior conviction for a crime-of-violence. The Court stated:

> It would be unreasonable to conclude that a military conviction for the offense of armed robbery which is equivalent to our crime of robbery would be exempt from use as a prior conviction for purposes of a recidivist statute.

*Smith*, 598 A.2d at 272. Consequently, based upon this authority, we hold that military court martial convictions constitute a "federal conviction" pursuant to 204

Pa.Code § 303.8(f)(1) for purposes of determining the prior record score to the extent the conviction is for conduct similarly illegal under Pennsylvania law.[1] Having reached the above conclusion, the greater question in the present case is whether or not Appellant's court martial was for conduct that would constitute an equivalent criminal offense under Pennsylvania law.

¶ 8 Determining what Appellant was convicted of in his court martial is considerably more difficult than in *Smith*. There, Smith was charged under 10 U.S.C. § 922, Robbery, which is defined in the UCMJ as:

> Any person subject to this chapter who with intent to steal takes anything of value from the person or in the presence of another, against his will, by means of force or violence or fear of immediate or future injury to his person or property or to the person or property of a relative or member of his family or of anyone in his company at the time of the robbery, is guilty of robbery and shall be punished as a court-martial may direct.

The specificity of the offense in the UCMJ allowed easy comparison of the elements of the offense under both the UCMJ and the Crimes Code in Pennsylvania. Unfortunately, the same cannot be said for the present case. Notably, the UCMJ, while containing a wide variety of criminal offenses, is not as comprehensive as our own Crimes Code.[2] Thus, while the UCMJ cov-

---

1. It would seem to contravene the general principle supporting the *Smith* decision to allow a prior record score enhancement for conduct that is not illegal under Pennsylvania law.

2. Examples of offenses contained in the UCMJ which have recognizable counterparts in Pennsylvania's Crimes Code include: drunken or reckless operation of a vehicle, aircraft, or vessel, 10 U.S.C § 911; wrongful use, possession, etc., of controlled substances, 10 U.S.C § 912a; riot or breach of peace, 10

U.S.C § 916; murder, 10 U.S.C § 918; manslaughter, 10 U.S.C § 919; rape and carnal knowledge, 10 U.S.C § 920; larceny and wrongful appropriation, 10 U.S.C § 921; robbery, 10 U.S.C § 922; forgery, 10 U.S.C § 923; making, drawing, or uttering check, draft, or order without sufficient funds, 10 U.S.C § 923a; arson, 10 U.S.C § 926; extortion, 10 U.S.C § 927; assault, 10 U.S.C § 928; burglary, 10 U.S.C § 929; perjury, 10 U.S.C § 131.

ers many prominent offenses, a strong possibility exists that there will not be a readily comparable offense in our own Crimes Code. Also, the UCMJ covers many "offenses" that are essentially unique to military service.[3] As such, a conviction in a military court might be for conduct that is wholly foreign to the civilian world.

¶ 9 Adding possibly even greater uncertainty to the inquiry, there is also a "catch-all" provision entitled "General article." This article provides:

§ 934. Art. 134. General article

Though not specifically mentioned in this chapter [10 U.S.C.S. §§ 801 et seq.], all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter [10 U.S.C.S. §§ 801 et seq.] may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

10 U.S.C § 934. This last article is highly relevant to the within case because it is the article that Appellant was charged with and convicted upon.

■ ¶ 10 Researching cases discussing court martials under this article reveals that they can be founded upon conduct that would be deemed criminal in most jurisdictions,[4] but can also encompass conduct that would not be deemed criminal in

most jurisdictions. For instance, in *United States v. Mayfield*, 21 M.J. 418 (1986), the defendant was charged with fraternization. The specification alleged:

that [defendant] did, on or about 3 July 1981, 10 July 1981 and 11 July 1981 at Fort Lee, Virginia, an installation under military control, wrongfully fraternize on terms of military equality with an enlisted person, Private (E–2) Elita R. Griffin, a woman not his wife, by asking said Private (E–2) Elita R. Griffin for a date on three occasions, and that under the circumstances, such conduct was prejudicial to good order and discipline in the armed forces.

*Id.* at 419. Perhaps recognizing the problematical nature of this General article, the Manual suggests that at least some convictions under this article should not be recognized for purposes of calculating the prior score. The Manual reads, "non-judicial punishments or administrative actions (e.g.—Article 15, Article 134) which are not convictions should not be included in the prior record score." PENNSYLVANIA COMM'N ON SENTENCING, *supra*, at 141.

¶ 11 Our situation is even more attenuated by the fact that Appellant was charged and convicted of committing "indecent acts." Again, research of military decisions reveals that the offense of "indecent acts," although generally dealing with prohibited sexual behavior, can comprise activity that is both legal and illegal under Pennsylvania law.

¶ 12 The elements of the offense of indecent acts with another are that (1) the

---

**3.** A listing of some of these offenses includes: desertion, 10 U.S.C § 885; absence without leave, 10 U.S.C § 886; contempt toward officials, 10 U.S.C § 888; disrespect toward superior commissioned officer, 10 U.S.C § 889; insubordinate conduct toward warrant officer, noncommissioned officer, or petty officer, 10 U.S.C § 891; failure to obey order or

regulation, 10 U.S.C § 892; misbehavior before the enemy, 10 U.S.C § 899 and misconduct as prisoner, 10 U.S.C § 905.

**4.** An example might be kidnapping, *United States v. Williams*, 17 M.J. 207 (1984), and possession of child pornography, *United States v. Wagner*, 52 M.J 634 (1999).

defendant committed a certain wrongful act with a certain person, (2) the act was indecent, and (3) the conduct of the accused was to the prejudice of good order and discipline of the armed forces or was of a nature to bring discredit upon the armed forces. *United States v. Foster*, 40 M.J. 140 (1994), Manual for Courts–Martial, United States (*MCM*), Part IV, P 90b (1995 ed.). Generally speaking, the offense of indecent acts deals with "sexual misconduct." However, the offense of indecent acts deals with "sexual misconduct" under Military law. Not all offenses of indecent acts, or other sexual behavior proscribed under Military law, translate to offenses under Pennsylvania law. While it has been stated that "Congress has not intended by Article 134 and its statutory predecessors to regulate the wholly private moral conduct of an individual," *United States v. Snyder*, 1 U.S.C.M.A. 423, 427, 4 C.M.R. 15 (1952), clearly, one enlisted in the military is subject to greater regulation of his sexual conduct than an average citizen. This fact is illustrated by the proscription of sodomy, of all kinds. 10 U.S.C. § 925. As defined in the UCMJ, this would include consensual oral sex between married partners in the privacy of their own home. *See United States v. Allison*, 56 M.J. 606 (2001). Clearly, such a proscription in the general civilian population would be viewed as unconstitutional. *See Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).

¶ 13 Additionally, under Military law, a sexual act otherwise lawful under military law may violate Article 134, if it is committed "openly and notoriously." *United States v. Berry*, 6 U.S.C.M.A. 609, 614, 20 C.M.R. 325, 330 (1956). "Open and notori-

ous," however, does not necessarily mean "in public," which might make such an act illegal under Pennsylvania's, and most other states', laws. An act is "open and notorious" "when the participants know that a third person is present." *Id.* Under this principle of Military law, a couple that engaged in consensual intercourse in a barracks room behind a sheet hung to provide privacy was convicted of engaging in an indecent act when there were other soldiers in the barracks room that could discern what conduct was taking place behind the sheet. *United States v. Izquierdo*, 51 M.J. 421 (1999).

¶ 14 The open and notorious factor is not the only factor that can constitute indecency for § 934 purposes. In *United States v. Wheeler*, 40 M.J. 242 (1994), indecency was found in a consensual sexual relationship between the defendant and his seventeen-year-old stepdaughter.[5] Moreover, the nature of the act can lend itself to a finding of indecency, even if occurring in private, such as with oral sex. *United States v. Harris*, 25 M.J. 281, 282 (CMA 1987) ("It would indeed be a tortured exercise in semantics to conclude that oral sodomy is not an indecent act."). Additionally, otherwise legal consensual intimate touching might constitute indecent acts if it amounts to foreplay to intercourse which would violate Military law. *United States v. Stocks*, 35 M.J. 366 (1992).

■ ¶ 15 Thus, it can be plainly seen from the above examples that one cannot automatically equate a court martial for committing an indecent act under Article 134 with the commission of the equivalent crime under Pennsylvania law. We turn

---

5. Although engaging in sexual intercourse with a step-child would not constitute incest under Pennsylvania law, 18 Pa.C.S. § 4302, it did constitute the offense of incest under Alabama law, where the offense occurred. Ala-

bama Code 13A–13–3. Nevertheless, there is no indication in the opinion that the finding of indecency hinged upon the statutory definition of incest in Alabama.

now to the specifics of Appellant's court martial conviction to determine whether it represents a conviction for an equivalent Pennsylvania offense.

¶ 16 In the present case, the factual allegations leading to Appellant's court martial indicate that he, on two occasions, committed an indecent act with SPC Roy B. Thompson. The first specification alleged that on December 6, 1989, Appellant committed an indecent act by pushing Specialist Roy B. Thompson on to a bed and jumping on him and moving his hips up and down while on top of Specialist Thompson. The second specification alleged that on December 15, 1989, Appellant grabbed Specialist Thompson's penis and buttocks through his pants and said to him, "I want to suck your dick until you come three times." The trial court concluded that this would constitute the offense of indecent assault under Pennsylvania law. However, proof of indecent assault in Pennsylvania requires in the very least proof of a lack of consent. 18 Pa. C.S. § 3126.[6] Appellant, through his attorney, argued at the sentencing hearing that there was no indication that there was a judicial finding that the acts for which Appellant was court martialed were non-consensual. Thus, it was improper to equate the court martial with indecent assault under Pennsylvania law. We agree.

¶ 17 In the first instance, we question whether it is appropriate to base a comparison of Appellant's court martial conviction to equivalent Pennsylvania offenses by referring to a charging document as opposed to a comparison of the elements of the crime actually convicted upon. As the name implies, a document containing charges contains only allegations. The mere fact that Appellant was convicted does not mean that every allegation contained in the charging documents was proven. This is why it is essential to compare elements to determine the minimum showing sufficient to establish the offense in question, as this is all that can be assumed to have been conclusively proven in the prior trial.[7]

6. Indecent assault is defined, in relevant part as follows:

   **§ 3126. Indecent assault**
   **(a) Offense Defined.**—A person who has indecent contact with the complainant or causes the complainant to have indecent contact with the person is guilty of *indecent assault* if:
   (1) the person does so without the complainant's consent;
   (2) the person does so by forcible compulsion;
   (3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
   . . .

7. In a similar context the New York Court of Appeals stated:
   As a general rule, this inquiry is limited to a comparison of the crimes' elements as they are respectively defined in the foreign and New York penal statutes. The allegations contained in the accusatory instrument underlying the foreign conviction may ordinarily not be considered, because such instruments frequently contain nonessential recitals (*People v. Olah*, 300 N.Y. 96, 98, 89 N.E.2d 329; *see, e.g., People v. Spann*, 56 N.Y.2d 469, 452 N.Y.S.2d 869, 438 N.E.2d 402). Since recitals that go beyond the statutorily required elements are not necessary to the determination of guilt, there can be no assurance that such allegations played any actual part in the foreign conviction *(see, People ex rel. Goldman v. Denno*, 9 N.Y.2d 138, 142, 211 N.Y.S.2d 403, 172 N.E.2d 663). Accordingly, resort to such recitals to ascertain the nature of the crime of which the defendant was convicted has generally been deemed improper *(see, People v. Gonzalez*, 61 N.Y.2d 586, 475 N.Y.S.2d 358, 463 N.E.2d 1210).
   *People v. Muniz*, 74 N.Y.2d 464, 548 N.Y.S.2d 633, 547 N.E.2d 1160 (1989). However, to the extent a jurisdiction deems it permissible to look beyond the statutory elements of a prior conviction to determine what was established in the criminal trial, principles of collateral estoppel necessarily limit the conclu-

¶ 18 Nevertheless, turning to the relevant documentation provided by the court, the Department of the Army forwarded a document entitled "Report of Result of Trial." This document indicates that Appellant did "wrongfully commit an indecent act with SPC Roy B. Thompson o/a 6 Dec 89." As the discussion above demonstrates unequivocally, one cannot conclude from the mere fact of conviction for "indecent acts" under Military law that there was a non-consensual but indecent touching of another person as is required to convict one for indecent assault under Pennsylvania law.

¶ 19 It is notable that a charge exists under Military law for indecent assault that, like Pennsylvania's definition of indecent assault, requires proof of a non-consensual touching. The court stated in *United States v. Leak*, 58 M.J. 869, 877 (2003):

> Proof of indecent assault includes a requirement that " 'bodily harm ... must be done ... without the lawful consent of the person affected.' Bodily harm is defined as 'any offensive touching of another, however slight.' " *United States v. Johnson*, 54 M.J. 67, 69 (C.A.A.F. 2000) (quoting *MCM*, 1995, Part IV, para. 54c(1)(a)).
>
> . . .
>
> Appellant did "bodily harm" to SPC M in that his actions were an " '*offensive touching* of another, however slight.' " *United States v. Watson*, 31 M.J. 49, 53 (C.M.A.1990) (quoting *MCM*, 1984, Part IV, para. 54c(1)(a)) (alteration in original). Grabbing SPC M and attempting to unbutton her trousers was "without

her consent and with intent to gratify [appellant's] sexual desires." *Id.* Under the circumstances of this case, we are satisfied beyond a reasonable doubt of appellant's guilt of indecent assault. . . .

¶ 20 Moreover, the offense of indecent acts is a lesser included offense of indecent assault under Military law. *United States v. Foster*, 40 M.J. 140 (1994). A comparison of the elements of each reveals that the essential difference between indecent assault and indecent acts is that indecent assault requires a showing of non-consensual touching. Thus, had Appellant been convicted of indecent assault as opposed to indecent acts, the court may well have been justified in concluding that Appellant's court martial conviction was for the Pennsylvania equivalent of indecent assault.[8] However, Appellant's conviction for indecent acts does not establish that Appellant had non-consensual indecent contact with another person and the failure to even charge Appellant with indecent assault raises considerable suspicion that the charges were based upon consensual acts.

■ ¶ 21 Nevertheless, assuming momentarily that it is appropriate to consider the "charge sheet" to conclude whether or not Appellant's court martial conviction is the equivalent of indecent assault under Pennsylvania law, the allegations contained therein still do not establish an indecent assault. Initially, the charge sheet alleged that Appellant committed an indecent act "upon" SPC Thompson. However, this term was crossed out and a handwritten term "with" was inserted in its place. Appellant argues that the use of the terminol-

---

siveness of the prior criminal judgment to matters "essential to the final judgment of conviction in the criminal case." *Dettmann v. Kruckenberg*, 613 N.W.2d 238, 247 (Iowa 2000).

8. In actuality, it may have been necessary to ensure that Pennsylvania and Military law

defined lawful consent in essentially the same fashion prior to determining that the conviction was for the equivalent Pennsylvania offense.

ogy "with" implies consensual conduct. We agree. While the term "upon" does not necessarily connote a non-consensual act as might the term "against," clearly the term "with" connotes joint or mutual participation as well as consensual behavior and the change from "upon" to "with" is notable as a seemingly ameliorating step. In the very least, the choice of terms is ambiguous. Indeed, when this same argument was advanced in Military Court, the Court found it persuasive. The Court stated:

> In the circumstances here, to constitute the offense of assault and battery, the touching involved must be nonconsensual. The touching involved in the offense of committing an indecent act with another adult, as is here alleged, may be consensual or nonconsensual. The specification concerned does not expressly state whether the indecent act was done with or without McDonald's consent. In fact, by alleging that the act was done with McDonald it might be implied that the act was consensual. However, disregarding completely the possibility of such an implication, the language of the specification, considered in toto, cannot be said to "fairly" imply that the indecent, lewd and lascivious act alleged was accomplished without the consent of McDonald, and such an allegation is essential to render any touching of McDonald's body by the accused an assault and battery.

*United States v. Thacker*, 36 C.M.R. 954, 958 (1966).

¶ 22 Notably, consensual homosexual conduct is not permitted under Military law. As the court stated in *Hensala v. Dep't of the Air Force*, 343 F.3d 951, 952 (9th Cir.2003):

> "Since 1957, the Uniform Code of Military Justice has criminalized sex between service members of the same gender and provided that such conduct is an offense punishable by court martial. 10 U.S.C. § 925."

¶ 23 Consistent with this position, the commission of homosexual acts has been the basis for a finding of indecency for purposes of convicting of indecent acts. Mutual homosexual masturbation was a basis for a finding of committing an indecent act in *United States v. Miller*, 23 M.J. 553 (1986), and in *United States v. Rutko*, 36 M.J. 798 (1993), the court concluded that evidence establishing that "appellant placed his hand on CPL C's thigh and then his groin area," *id.* at 799, was sufficient to support a charge of indecent acts. Thus, under Military law, consensual acts of the type Appellant was accused of committing would seemingly satisfy the elements of indecent acts in various respects. As such, it seems clear that Appellant's convictions for indecent acts "with SPC Roy B. Thompson" cannot be equated with indecent assault under Pennsylvania law.

¶ 24 Given our conclusion above, it is necessary to vacate Appellant's judgment of sentence. Our conclusion above requires us to assume that Appellant's sentence was enhanced upon proof of nothing more than consensual sexual activity with another man. Of course, this constitutes no crime under Pennsylvania law. In the process of first vacating Appellant's original sentence and then in imposing a new sentence, the court has not pointed to any other factor other than Appellant's court martial for indecent acts to justify the increasing of Appellant's sentence. Therefore, we will remand the present case with directions to impose the sentence originally ordered.

¶ 25 Judgment of sentence vacated. Remanded for re-sentencing consistent with this Opinion. Jurisdiction relinquished.