# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alexander Lopuchin,                        :
                              Petitioner   :
                                           :
        v.                                 :   No. 587 M.D. 2016
                                           :   Argued:  December 13, 2018
Pennsylvania State Police,                 :
                              Respondent   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**              **FILED:  July 16, 2019**


Petitioner Alexander Lopuchin filed an amended petition for review in the nature of a request for injunctive and declaratory relief (Petition) against the Pennsylvania State Police (PSP), relating to PSP's classification of Petitioner as a Tier III sex offender under Pennsylvania's Sex Offender Registration and Notification Act (SORNA),[1] 42 Pa. C.S. §§ 9799.10-.41, which has now been

---

[1] As we explained in *Dougherty v. Pennsylvania State Police*, 138 A.3d 152 (Pa. Cmwlth. 2016) (en banc):

Courts have also referred to SORNA as the Adam Walsh Act.  SORNA is the General Assembly's fourth enactment of the law commonly referred to as Megan's Law.  Megan's Law I, the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted on October 24, 1995, and became effective 180 days thereafter. Megan's Law II[, the Act of May 10, 2000, P.L. 74,] was enacted on May 10, 2000[,] in response to Megan's Law I being ruled unconstitutional by our Supreme

replaced by SORNA II. Petitioner seeks an order requiring PSP to conduct an official review of Petitioner's conviction under Article 120 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920, review his registration status, and issue a final, appealable decision with regard to his registration status. He also seeks an

Court in *Commonwealth v. Williams*, . . . 733 A.2d 593 ([Pa.] 1999). Our Supreme Court held that some portions of Megan's Law II were unconstitutional in *Commonwealth v. Gomer Williams*, . . . 832 A.2d 962 ([Pa.] 2003), and the General Assembly responded by enacting Megan's Law III[, the Act of November 24, 2004, P.L. 1243,] on November 24, 2004. The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901-16945, and the Pennsylvania General Assembly responded by passing SORNA on December 20, 2011[,] with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006." 42 Pa. C.S. § 9799.10(1). SORNA went into effect a year later on December 20, 2012. Megan's Law III was also struck down by our Supreme Court for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. [*Cmwlth.*] *v. Neiman*, . . . 84 A.3d 603, 616 ([Pa.] 2013). However, by the time it was struck down, Megan's Law III had been replaced by SORNA.

*Dougherty*, 138 A.3d at 155 n.8. Our Supreme Court, by decision and order dated July 19, 2017, declared SORNA unconstitutional in *Commonwealth v. Muniz*, 164 A.3d 1189, 1193 (Pa. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 925 (2018).

The General Assembly responded to the *Muniz* decision by enacting the Act of February 21, 2018, P.L. 27 (Act 10). Shortly thereafter, the General Assembly reenacted and amended various provisions of Act 10 by the Act of June 12, 2018, P.L. 140 (Act 29). The statutory provisions of Acts 10 and 29 are set forth at 42 Pa. C.S. §§ 9799.10-.75, and we will refer to them herein as SORNA II.

Recently, in *Commonwealth v. Wood*, 208 A.3d 131 (Pa. Super. 2019) (en banc), the Superior Court concluded that SORNA II was unconstitutional as applied based on *ex post facto* concerns when the offender committed the offense prior to the effective date of SORNA in 2012 and the offense was not an offense that would have triggered registration requirements at the time the offender committed the offense. Here, Petitioner committed the offense in 2013 (*see* Petition, Ex. B), and, therefore, the Superior Court's analysis in *Wood* is not relevant to our analysis here today.

order requiring PSP to reclassify him as a Tier I sex offender or, alternatively, declare SORNA's irrebuttable presumption of a high risk of recidivism unconstitutional as applied to Petitioner. Before the Court is Petitioner's application for summary relief (Application). We now grant Petitioner's Application, in part.

In 2014, Petitioner was convicted at a trial by court-martial of a violation of Article 120 of the UCMJ and "sentenced to be reduced in military rank, to be discharged from the Navy[,] and to serve 60 days [of] confinement."[2]

---

[2] The parties represent that Petitioner was convicted of subsection (b) of Article 120 of the UCMJ, 10 U.S.C. § 920(b), entitled Sexual Assault, which at the time provided:

(b) Sexual assault.--Any person subject to this chapter who--

    (1) commits a sexual act upon another person by--

        (A) threatening or placing that other person in fear;

        (B) causing bodily harm to that other person;

        (C) making a fraudulent representation that the sexual act serves a professional purpose; or

        (D) inducing a belief by any artifice, pretense, or concealment that the person is another person;

    (2) commits a sexual act upon another person when the person knows or reasonably should know that the other person is asleep, unconscious, or otherwise unaware that the sexual act is occurring; or

    (3) commits a sexual act upon another person when the other person is incapable of consenting to the sexual act due to--

        (A) impairment by any drug, intoxicant, or other similar substance, and that condition is known or reasonably should be known by the person; or

        (B) a mental disease or defect, or physical disability, and that condition is known or reasonably should be known by the person;

is guilty of sexual assault and shall be punished as a court-martial may direct.

Based upon the documents now before the Court, we are unable to verify the specific subsection of Article 120 of the UCMJ under which Petitioner was convicted. (*See* General Court-Martial Order, attached to Petitioner's Br. at Ex. B.) Nonetheless, this does not change our analysis, as it

(Petition ¶ 4.)    Petitioner appealed his conviction, but it became final and the sentence executable on March 9, 2016.  (Petition ¶ 5.)  As a result of his conviction, PSP classified Petitioner as a Tier III sex offender under SORNA.[3]  (*See* Petition at ¶ 19.)

According to a Department of Defense (DOD) form, entitled "Notice of Release/Acknowledgment of Convicted Sex Offender Registration Requirements" (DOD Form), attached to PSP's brief, DOD notified Petitioner that he was required to register as a sex offender.  (PSP's Br. at Ex. B.)  Petitioner appears to have signed the DOD Form on April 4, 2014.  Through the DOD Form, Petitioner acknowledged that he was convicted in March 2014 of the offense of Aggravated Sexual Abuse, 18 U.S.C. § 2241, although the parties represent that Petitioner was convicted of Sexual Assault under subsection (b) of Article 120, 10 U.S.C. § 920(b).[4] Through the DOD Form, Petitioner further acknowledged that the offense for which he was convicted requires him to register as a sex offender following his release from military confinement.  (*Id.*)  According to PSP, after returning to Pennsylvania, Petitioner reported to PSP to register on May 10, 2014.  Thereafter, PSP notified Petitioner that it classified him as a Tier III sex offender.  PSP attached to its brief another document, entitled "Out of State (OOS) Registration/Tier," dated June 12, 2014, which PSP refers to as its Equivalency Determination Sheet.  (PSP's

---

will be the responsibility of the PSP to determine the specific offense for which Petitioner was convicted under the UCMJ and its relevant equivalency, if any, under Pennsylvania law.

[3] Pursuant to SORNA and SORNA II, PSP is tasked with determining the equivalency of out-of-state sex offenses to Pennsylvania sex offenses for purposes of tier classification and registration requirements.  42 Pa. C.S. § 9799.14.

[4] The parties make no other mention of the reference to the offense of Aggravated Sexual Abuse under 18 U.S.C. § 2241 in their filings to this Court.

Br. at Ex. C.) The Equivalency Determination Sheet identified the crime for which Petitioner was convicted as "Sexual Assault" and identified the similar offense as "PA 3124.1," presumably shorthand for 18 Pa. C.S. § 3124.1, pertaining to Sexual Assault.[5]

By letter dated June 9, 2016, Petitioner requested PSP to reconsider the classification, contending (1) that the military conviction on which PSP based its classification is properly analogous to a Tier I offense, not a Tier III offense, and (2) that SORNA's irrebuttable presumption that all sex offenders pose a high risk for recidivism as applied to Petitioner resulted in a violation of his due process rights. (Petitioner's Br. at Ex. E.) PSP responded by letter dated June 24, 2016, stating that, after a review of Petitioner's file, pertinent statutes, and case law, PSP determined that Petitioner is correctly registered as a Tier III sex offender based on his military conviction being the equivalent of a conviction for the offense of Sexual Assault under 18 Pa. C.S. § 3124.1.[6] (Petitioner's Br. at Ex. A.) In its brief to this Court, PSP contends, however, that it found the military offense for which Petitioner was

---

[5] 18 Pa. C.S. § 3124.1, pertaining to Sexual Assault, provides: "Except as provided in [18 Pa. C.S. §] 3121 (relating to rape) or [18 Pa. C.S. §] 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent."

[6] Petitioner filed an earlier action in this Court's appellate jurisdiction, docketed as *Lopuchin v. Pennsylvania State Police*, No. 1234 C.D. 2016, wherein he sought to appeal PSP's letter, dated June 24, 2016, denying Petitioner's request for reclassification of his tier status under SORNA. By single-judge opinion, dated October 11, 2016, this Court dismissed the matter for lack of jurisdiction without prejudice to Petitioner to seek any remedies that he may have in this Court's original jurisdiction. *Lopuchin v. Pa. State Police* (Pa. Cmwlth., No, 1234 C.D. 2016, Oct. 12, 2016).

convicted to be the equivalent of the Pennsylvania offense of Aggravated Indecent Assault, 18 Pa. C.S. § 3125(a)(4).[7]

In his Petition, Petitioner avers that he complied with the SORNA registration requirements while seeking review of his military conviction, and, upon completion of the military appeals process when his conviction became final, he sought review of his registration tier by PSP. Petitioner contends that a military offense for which he was convicted—*i.e.*, Sexual Assault—is distinguishable from a conviction for similar sexual offenses under Pennsylvania law, because military law provides for "a broader definition of impairment by alcohol that involves both a subjective and objective analysis of knowledge of impairment by the accused that is significantly different [from] Pennsylvania law."[8] (Petition ¶ 25.) As a result, Petitioner contends that PSP's statutory duty required it to exercise discretion in determining the equivalent Pennsylvania offense, if any, and to provide him with due process, including an evidentiary hearing, the latter of which PSP failed to do. Petitioner further contends that SORNA's irrebuttable presumption that all sex

---

[7] 18 Pa. C.S. § 3125(a)(4), pertaining to Aggravated Indecent Assault, provides, in part:

(a) . . . a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

. . . .

(4) the complainant is unconscious or the person knows that the complainant is unaware that the penetration is occurring[.]

[8] In support of that position, he avers that he and an adult female "were drinking and dancing together, and then they engaged in what . . . Petitioner believed was consensual sex. The findings at trial demonstrate that the conviction was based on a determination that . . . Petitioner's mistaken belief that the complaining witness was capable of consenting was not reasonable." (Petition ¶ 24.) Petitioner further avers that "an analysis of the Military Judge's instructions at trial . . . indicate that a conviction can occur as a result of negligence or absence of care." (*Id.*)

6

offenders have a high rate of recidivism also violates his due process rights and that PSP must afford him the opportunity to rebut the presumption during the course of an evidentiary hearing.[9]

Petitioner then filed the subject Application, contending that PSP violated his due process rights when PSP classified him as a Tier III sex offender based upon his military conviction without conducting an evidentiary hearing and allowing him an opportunity to rebut SORNA's presumption that all sex offenders have a high rate of recidivism. The gist of Petitioner's argument appears to be that PSP's analysis of his case required more than a review of his file, statutory provisions, and case law, because his conviction under the UCMJ is not the same as any conviction under Pennsylvania law. Rather, Petitioner asserts that PSP's review required additional analysis of the severity of the military offense of "Sexual Assault" for which he was convicted to determine the appropriate SORNA classification and suggests that the offense for which he was convicted is more equivalent to "Indecent Assault"[10] than "Sexual Assault"[11] under Pennsylvania law based upon the range of sentences for both. Petitioner's assertion that additional analysis is required is based on his view that the offense under the UCMJ allows for negligent acts to result in a conviction, which distinguishes the military offense of Sexual Assault from Pennsylvania's offense of Sexual Assault. In support of this argument, Petitioner observes that the Superior Court has opined that "[t]he UCMJ, while containing a wide variety of criminal offenses, is not as comprehensive as our

---

[9] Petitioner avers that "SORNA's irrebuttable presumption that all sex offenders have a high risk of recidivism is a broad overgeneralization that does not reflect an accurate understanding of the available data and studies of recidivism rates." (Petition ¶ 30.)

[10] 18 Pa. C.S. § 3126.

[11] 18 Pa. C.S. § 3124.1.

7

own Crimes Code. Thus, while the UCMJ covers many prominent offenses, a strong possibility exists that there will not be a readily comparable offense in our own Crimes Code." *Cmwlth. v. Coleman*, 854 A.2d 978, 981-82 (Pa. Super. 2004) (footnote omitted), *vacated in part on other grounds*, 874 A.2d 1150 (Pa. 2005).

Petitioner further posits that, because Tier III classification requires lifetime registration, he should have been afforded an evidentiary hearing and assessment similar to that provided when determining whether an individual is a "Sexually Violent Predator" (SVP) under Section 9799.24(b) of SORNA, 42 Pa. C.S. § 9799.24(b), given that a classification as an SVP also results in lifetime registration.[12] Petitioner argues that PSP's failure to do so resulted in a violation of

---

[12] We note that the Supreme Court in *Muniz* held that Section 9799.24(e)(3) of SORNA, which provides that, "[a]t the hearing prior to sentencing, the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator," violates the federal and state constitutions as applied to individuals designated as SVPs for crimes committed after SORNA's effective date. Our Supreme Court's resolution in *Muniz* rested on its determination that SORNA's increased registration requirements *for SVPs* constituted punishment for purposes of the federal and state constitutions. The Superior Court, in *Commonwealth v. Butler*, 173 A.3d 1212, 1213 (Pa. Super. 2017), *appeal granted*, 190 A.3d 581 (Pa. 2018), considered whether the reasoning of *Muniz* applied to render Section 9799.24(e)(3) of SORNA unconstitutional also for individuals designated as SVPs for crimes committed after SORNA's effective date and concluded it did. As a result, the Superior Court held Section 9799.24(e)(3) to be unconstitutional in general. The Superior Court opined:

> [S]ince our Supreme Court has held that SORNA registration requirements are punitive or a criminal penalty to which individuals are exposed, then . . . a factual finding, such as whether a defendant has a "mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses[,]" [Section 9799.12 of SORNA, 42 Pa. C.S. § 9799.12], that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder. Section 9799.24(e)(3) identifies the trial court as the finder of fact in all instances and specifies clear and convincing evidence as the burden of proof required to designate a convicted defendant as an SVP. Such a statutory scheme in the criminal context cannot withstand constitutional scrutiny. Accordingly, we are constrained to hold that [S]ection 9799.24(e)(3) is unconstitutional.

8

his constitutional due process rights, because he was not afforded an opportunity to challenge SORNA's presumption regarding the likelihood of recidivism.[13] Petitioner, in support of his constitutional due process claim, asserts a fundamental right to his reputation that will be significantly impacted throughout the time period that he is subjected to SORNA registration requirements.

By order dated November 27, 2018, this Court directed the parties to be prepared to address at oral argument whether PSP's classification of Petitioner as a Tier III sex offender under SORNA, 42 Pa. C.S. §§ 9799.10-.42, constitutes an adjudication under Section 101 of the Administrative Agency Law, 2 Pa. C.S. § 101, and, if so, whether it is an invalid adjudication under Section 504 of the Administrative Law, 2 Pa. C.S. § 504, because Petitioner did not receive notice and an opportunity to be heard.[14] *See Phila. Cty. Med. Soc'y v. Kaiser*, 699 A.2d 800 (Pa. Cmwlth. 1997) (en banc) (*Kaiser*).

---

*Butler*, 173 A.3d at 1217-18. Petitioner, although referencing the hearing provided by Section 9799.24(e)(3) of SORNA, does not acknowledge that the Superior Court struck that provision from SORNA. This failure on Petitioner's part, however, does not impact this Court's ability to appreciate his argument that Petitioner should receive some form of a hearing nor does the Superior Court's striking of this statutory provision dispose of the matter now before this Court.

[13] *See In re J.B.*, 107 A.3d 1, 16-17 (Pa. 2014) (holding "SORNA['s] registration requirements, premised upon the presumption that all sexual offenders pose a high risk of recidivating, impinge upon juvenile offenders' fundamental right to reputation as protected under the Pennsylvania Constitution."); *see also Taylor v. Pa. State Police*, 132 A.3d 590 (Pa. Cmwlth. 2016) (en banc) (overruling PSP's preliminary objection that petitioner failed to state claim under due process clause of Pennsylvania Constitution as it relates to SORNA's presumption).

[14] The term "adjudication," as used in the Administrative Agency Law, is defined as follows:

Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made. The term does not include any order based upon a proceeding before a

Since argument on this matter, our Court, sitting en banc, has addressed this precise matter in *M.S. v. Pennsylvania State Police*, ___ A.3d ___ (Pa. Cmwlth., No. 335 M.D. 2017, filed June 11, 2019)—a case which involves circumstances similar to those present in the matter now before this Court.[15] In *M.S.*, the petitioner, while a Cadet at the United States Coast Guard Academy, was convicted at a trial by general court-martial of sexual assault in violation of Article 120(b)(3)(A) of the UCMJ, 10 U.S.C. § 920(b)(3)(A). After his release from confinement and return to Pennsylvania, PSP designated the petitioner as a Tier III sex offender under SORNA—subject to lifetime registration and publication—based on the asserted similarity of his military offense to Section 3125(a)(4) of the Pennsylvania Crimes Code, 18 Pa. C.S. § 3125(a)(4). The petitioner, having requested to no avail a hearing from PSP to object to the determination, filed in this Court's original jurisdiction a petition for review in the nature of a complaint in mandamus and for declaratory relief. The petitioner, in part, asserted that PSP was required to provide him with a hearing to challenge the propriety of its equivalency determination designating him as a Tier III sex offender because he was not convicted of an expressly enumerated offense set forth in Section 9799.14(d) of SORNA. We concluded that the petitioner, "even in the absence of constitutional due process concerns, [was] entitled to a hearing under the Administrative Agency Law." *M.S.*,

_____

court or which involves the seizure or forfeiture of property, paroles, pardons or releases from mental institutions.

2 Pa. C.S. § 101. Section 504 of the Administrative Agency Law, 2 Pa. C.S. § 504, provides, in part: "No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard."

[15] The Court, recognizing that its en banc decision in *M.S.* would implicate the central issue in the above-captioned matter, held in abeyance its disposition of the above-captioned matter until the Court issued its decision in *M.S.* on June 11, 2019.

10

___ A.3d ___, slip op. at 8. More specifically, we held that "PSP must, consistent with the Administrative Agency Law, provide a sex offender with a post-equivalency determination administrative appeal remedy, which must include reasonable notice of a hearing and an opportunity to be heard" and result in a "valid adjudication, which would then be appealable to this Court. *See* 42 Pa. C.S. § 702." *M.S.*, ___ A.3d ___, slip op. at 11 (footnote omitted).

In the matter now before this Court, we agree with Petitioner that, because he was convicted of an offense not specifically enumerated in SORNA's tier classification scheme, PSP necessarily engaged in a nonministerial act when it classified Petitioner as a Tier III sex offender. Furthermore, it is apparent to the Court that, when PSP made its equivalency determination in 2014, it considered its determination to be final. It is beyond dispute that PSP's determination affected Petitioner's personal rights or obligations, because SORNA's registration requirements have the potential to affect one's reputation[16] and impose continuing obligations on registrants. It is also apparent that, in rendering its equivalency determination, PSP did not afford Petitioner "reasonable notice of a hearing and an opportunity to be heard," as required by Section 504 of the Administrative Agency Law. Thus, PSP's equivalency determination constituted an invalid adjudication under the Administrative Agency Law. *See M.S.*, ___ A.3d ___, slip op. at 11. For

---

[16] Petitioner has a personal right in his reputation. Although one's reputation is not protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, our Supreme Court has acknowledged that a person's reputation is protected by Article I, Section 1 of the Pennsylvania Constitution. *R. v. Dep't of Pub. Welfare*, 636 A.2d 142, 149 (Pa. 1994). Article I, Section 1 of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." "[R]eputation is among the fundamental rights that cannot be abridged without compliance with state constitutional standards of due process." *Taylor*, 132 A.3d at 605.

these reasons, we declare that PSP must comply with the Administrative Agency Law and provide Petitioner with a post-equivalency determination administrative appeal remedy, as set forth more fully in *M.S.*

Because we are directing PSP to provide Petitioner with an evidentiary hearing under the Administrative Agency Law, we need not consider whether PSP's failure to provide Petitioner with an evidentiary hearing constituted a violation of his constitutional due process rights. Furthermore, as PSP has not yet issued a valid adjudication as to Petitioner's tier status and Petitioner has not yet been afforded the process to which he is entitled under the Administrative Agency Law, it would be premature for this Court to consider Petitioner's remaining issue—*i.e.*, whether Petitioner must be afforded an opportunity to rebut the presumption that all sex offenders have a high rate of recidivism. Only after PSP issues a valid adjudication can this Court consider whether Petitioner received sufficient due process or whether he must receive additional process to allow him an opportunity to rebut that presumption.

Accordingly, Petitioner's Application is granted to the extent that it seeks an order from this Court, declaring that PSP must provide Petitioner a post-determination administrative remedy and adjudication on the question of whether he should be designated as a Tier III sex offender as a result of his military conviction.

P. KEVIN BROBSON, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alexander Lopuchin,             :
          Petitioner     :
                                 :
        v.                    :     No. 587 M.D. 2016
                                 :
Pennsylvania State Police,       :
          Respondent    :

# O R D E R

AND NOW, this 16th day of July, 2019, Petitioner's application for summary relief is GRANTED to the extent that it seeks an order from this Court, declaring that the Pennsylvania State Police (PSP) must provide Petitioner a post-determination administrative remedy and adjudication on the question of whether he should be designated as a Tier III sex offender as a result of his military conviction. PSP is directed to afford Petitioner an administrative remedy consistent with the accompanying opinion and the Administrative Agency Law, 2 Pa. C.S. §§ 501-508, 701-704.

 

                                       _____

                                       P. KEVIN BROBSON, Judge